UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                 Plaintiff,                 No. 03-CR-80412

vs.                                      Hon. Gerald E. Rosen

MOHAMAD ALI BERRY,

                 Defendant.

_____/

OPINION AND ORDER DENYING DEFENDANT'S
MOTION TO DISMISS INDICTMENT

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on        May 4, 2005       

PRESENT:  Honorable Gerald E. Rosen
                    United States District Judge

## I. INTRODUCTION

On February 27, 2001, Defendant Mohamad Ali Berry, an alien who had previously been deported from the United States after a conviction for commission of an aggravated felony, namely, Larceny from a Person, was found unlawfully present in the country without having obtained the consent of the Attorney General for re-application for admission. Accordingly, on May 14, 2003, Berry was charged in a one-count Indictment with violating 8 U.S.C. § 1326(b)(2) ("Re-entry of Alien Deported after Aggravated Felony"). Berry now has moved to dismiss the indictment by collaterally attacking the prior deportation order on which the present charge is based. Defendant

1

claims that his deportation hearing did not comport with due process and he was prejudiced thereby.  Having reviewed and considered Defendant's Motion and Brief, the Government's Response and the oral arguments of counsel, the Court is now prepared to rule on this matter.  For the reasons discussed below, Defendant's Motion to Dismiss Indictment will be denied.

## II.  <u>FACTUAL BACKGROUND</u>

On August 10, 1972, Defendant Mohamad Ali Berry was admitted to the United States as a resident alien.  However, on April 15, 1991, an Order to Show Cause was served upon Berry seeking to terminate his permanent resident alien status and placing him in removal (i.e., deportation) proceedings for having committed two crimes involving moral turpitude -- Attempted Breaking and Entering on July 19, 1990, and Larceny from a Person on October 8, 1990.

On April 28, 1992, Defendant, through counsel, applied for discretionary relief for a waiver of deportation under Section 212(c) of the Immigration and Nationality Act (the "INA"), 8 U.S.C. § 1182(c) (repealed, Sept. 30, 1996).[1]

---

[1]  Section 212(c) provided that

Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General.

8.U.S.C. § 1182(c) (Repealed.  Pub.L. 104-208, Div. C, Title III § 304(b), Sept. 30, 1996, 110 Stat. 3009-597).

The Board of Immigration Appeals interpreted this provision to permit any permanent resident alien with seven years of lawful unrelinquished domicile to apply for

However, prior to his May 1997 removal hearings, Defendant Berry was convicted in Michigan state court of an additional crime, possession of less than 25 grams of cocaine.  Accordingly, on May 1, 1997, Defendant was served with additional charges of deportability for his drug conviction.[2]  He was also notified on May 1, 1997 that his previous conviction for Larceny from a Person was also being classified as an aggravated felony under the amended Immigration and Nationality Act.

Therefore, at the time of Berry's removal hearing, his criminal history since having been admitted to the United States as a resident alien consisted of the following convictions:

1.    September 3, 1986, convicted of Malicious Destruction of Property over $100 in 19th District Court, Dearborn, Michigan;

2.    July 19, 1990, convicted of Attempted Breaking and Entering in Detroit Recorder's Court;

3.    October 8, 1990, convicted of Larceny from a Person in Detroit Recorder's Court; and

4.    November 5, 1996, convicted of possession of less than 25 grams of cocaine in Detroit Recorder's Court.

Defendant's removal hearing commenced on May 19, 1997.  At that hearing, Defendant admitted having received notice of the additional charges and was also

---

a waiver of deportation.  *See INS v. St. Cyr*, 533 U.S. 289, 295, 121 S.Ct. 2271 (2001) (citing *Matter of Silva*, 16 I & N Dec. 26, 30 (1976)).

[2]  Pursuant to M.C.L. § 333.7403(2)(a)(v), possession of less than 25 grams of cocaine is a felony, punishable by up to four years in prison.  The Sixth Circuit has determined that where a state conviction for possession of a controlled substance is punishable under state law by a term of imprisonment of more than one year, it would constitute an "aggravated felony" as defined by 8 U.S.C. § 1101(a)(43)(B).  *See Liao v Rabbett*, 398 F.3d 389 (6th Cir. 2005).

3

advised of the nature of those additional charges. The Immigration Judge ("IJ") also advised Defendant of the changes in the immigration laws which applied to his case. The IJ further informed Defendant of his right to be represented by counsel, although not at government expense.

Berry acknowledged that he had received a list of attorneys during his initial appearance on May 13, 1997 and told the judge that he was seeking legal representation. He further informed the judge that he had, in fact, made contact with some attorneys, but that he needed more time in which to retain one to represent him. The Immigration Judge agreed to adjourn the hearing until May 29, 1997 to allow Defendant to retain counsel.

At the continuation of the hearing on May 29, the judge inquired of Defendant whether he had retained counsel. Defendant responded that he had not retained an attorney but that he had had an opportunity to discuss his case with an attorney. The IJ then advised Defendant of his trial rights -- his right to object to the evidence, to cross-examine the government's witnesses, to bring in his own witnesses and present his own evidence.

Several times during the removal hearing, the IJ discussed what relief, if any, to which Defendant might be entitled. (*See* Tr., pp. 5, 11-13, 15-18, 20-21.)

During the judge's discussion with Defendant of his having been convicted of a controlled substance offense, Defendant stated that he had personally "reviewed the law over, up and down" and he knew that he was not entitled to discretionary relief from deportation because the narcotic that he was found in possession of was cocaine:

The Court:     [T]he allegation is that you were merely convicted of a

4

violation. . . related to a controlled substance.  Now what was that conviction for?

Mr. Berry:     The conviction was for possession --

Counsel for the Government:     Possession.

Mr. Berry:     -- under twenty-five grams.

Counsel for the Government:     Of cocaine.

* * *

Mr. Berry:     I have one question throughout this hearing, you[r] Honor --

The Court:     Sure. . . .

Mr. Berry:     The possession case -- if [this involved the] possession case alone, would -- I mean, I'm very sure about the larceny from a person, it's a[n] aggravated felony, and that there's no relief from deportation [because of it].  I am completely aware [of] that, but if it was the cocaine charge. . . if it was the cocaine charge alone, there wouldn't be no relief from deportation either?

The Court:     Well, let's look. . . . [T]he only relief I can foresee in most of these cases is 212(h). . . . [L]et me make sure so I'm not misquoting.

Mr. Berry:     I was told there's no relief at all for me.

The Court:     "The attorney-general may, in his discretion, waive the application" -- may give you relief -- . . . "as it relates to a single offense of simple marijuana."

Mr. Berry:     Oh, okay.

The Court:     And what was the cocaine?

Mr. Berry:     Twenty-five grams or less.

The Court:     That's why. . . .  You would not be eligible for relief. . . . You picked the wrong drug.

5

Tr. pp. 13-15.

Later, following Defendant's admission that his larceny from a person conviction was a crime of violence, Berry stated that he personally had reviewed the law and knew that he was not entitled to discretionary relief:

| | |
|---|---|
| The Court: | . . . [W]ith regard to. . . the allegation that you committed a crime involving violence, you so admit.  Correct? |
| Mr. Berry: | Correct, your Honor. . . . |
| The Court: | And as I indicated earlier, it appears the only relief that you would be entitled to is . . . 212(h). . . . |
| Mr. Berry: | I'm not even entitled to that, your Honor. |
| The Court: | You're not even entitle to that, it looks like, at this point. |
| Mr. Berry: | Yeah.  I reviewed this law over up and down.  I got no relief, you[r] Honor. |
| The Court: | Well, the relief is to make sure that you were in fact convicted. . . I suppose, so you weren't being deported for the wrong reason. |

*Id.* at 20-21.

Following this colloquy, the judge and Defendant Berry talked about improved conditions in Defendant's native country (Lebanon), to which Defendant responded, "That's why there's been a change in my mind as far as appeals and everything."  *Id.* at 22.

At the conclusion of the hearing, the Immigration Judge found Defendant deportable and ordered him removed to Lebanon.  *Id.  See also*, Order of Immigration

6

Judge, Government Ex. L.  The IJ then asked Defendant whether there was anything he wanted to appeal.  Defendant responded:

> I don't want to appeal nothing.  I'm just [ask]ing if the government can take into consideration since they have my passport, to try, you know, to make it a speedy procedure to deport me instead [of] me sitting in jail, if it's possible.

Tr. p. 23.

On June 18, 1997, Defendant was removed from the United States to Beirut, Lebanon.  On February 27, 2001, Defendant's wife, Carol Berry, notified the Immigration and Naturalization Service that Defendant had re-entered the United States and was serving a 93-day jail sentence for violation of a personal protection order she had against him.  The Indictment for illegal re-entry ensued.

Defendant now seeks dismissal of the indictment by collaterally attacking his removal.  Specifically, Defendant claims that his removal hearing did not comport with due process.

## III.  DISCUSSION

An alien who re-enters the United States after his removal for previous criminal conduct is guilty of a criminal offense.  8 U.S.C. § 1326 provides in pertinent part:

(a) Subject to subsection (b) of this section, any alien who --

> (1) has been denied admission, excluded, deported or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding and thereafter

> (2) enters, attempts to enter, or is at any time found in, the United States. . .

7

shall be fined under Title 18, or imprisoned not more than 2 years, or both.

(b) Notwithstanding subsection (a) of this section, in the case of any alien
described in such subsection --

> (1) whose removal was subsequent to a conviction for
> commission of three or more misdemeanors involving drugs,
> crimes against the person, or both, or a felony (other than an
> aggravated felony), such alien shall be fined under Title 18,
> imprisoned not more than 10 years, or both;

> (2) whose removal was subsequent to a conviction for
> commission of an aggravated felony, such alien shall be fined
> under such Title, imprisoned not more than 20 years, or both.

8 U.S.C. § 1326 (a), (b)(1),(2) (emphasis added).

Congress has imposed specific limitations on an alien's right to collaterally attack

the deportation order underlying a charge of illegal re-entry.  To succeed in a collateral

attack, an alien must show that:

> (1) the alien exhausted any administrative remedies that may have been
> available to seek relief against the order;

> (2) the deportation proceedings at which the order was issued improperly
> deprived the alien of the opportunity for judicial review; and

> (3) the entry of the order was fundamentally unfair.

*Id.* § 1326(d) (emphasis added).  Section 1326(d) is "intended to insure that minimum

due process was followed in the original deportation proceeding while preventing

wholesale, time consuming attacks on underlying deportation orders."  140 Cong. Rec.

S5558-01, S5571 (103rd Cong. May 11, 1994).[3]

---

[3]  Congress passed Section 1326(d) in response to *United States v. Mendoza-
Lopez*, 481 U.S. 828, 837-38, 107 S.Ct. 2148 (1987), in which the Supreme Court held
that "where a determination made in an administrative proceeding is to play a critical role

8

Because the three requirements of Section 1326(d) are stated in the conjunctive, they are mandatory and a defendant must satisfy all three in order to prevail in a collateral attack. *United States v. Roque-Espinoza*, 338 F.3d 724, 728 (7th Cir. 2003); *United States v. Wilson*, 316 F.3d 506 (4th Cir. 2003); *United States v. Fernandez-Antonia*, 278 F.2d 150, 157 (2nd Cir. 2002). Defendant here has not met this burden.

A.   <u>DEFENDANT FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES</u>

An alien has exhausted his administrative remedies within the meaning of Section 1326(d) when he has appealed the ruling of the immigration judge to the Board of Immigration Appeals (BIA). *Roque-Espinoza*, *supra*, 338 F.3d at. 728. The purpose of the exhaustion requirement is to require aliens to bring their claims in the immigration courts and the courts of the United States before illegally returning to this country. *Id.*

It is undisputed that Defendant Berry did not appeal his deportation order. The Immigration Judge explained to Defendant in clear and simple language that he had a right to appeal but Mr. Berry waived all right to contest his removal and seek an appeal. Mr. Berry understood his rights; he had spoken with an attorney and had personally reviewed the law. He understood that he had the right to appeal but he elected not to pursue that avenue.

Furthermore, Mr. Berry's waiver of his right to appeal was not due to the IJ's failure to inform him of any possible ground for relief from deportation; rather, as Mr. Berry himself stated, his decision not to pursue an appeal was because of the improved

_____

in the subsequent imposition of a criminal sanction, there must be some meaningful review of the administrative proceeding." *Id.*

conditions in his native country.  *See* Tr., p. 22.  In fact, he asked that his deportation be

expedited: "I don't want to appeal nothing.  I'm just [ask]ing if the government can take

into consideration since they have my passport, to try, you know, to make it a speedy

procedure to deport me instead [of] me sitting in jail, if it's possible."  *Id.*  In sum, Mr.

Berry's waiver of his right to appeal the order of deportation was knowing, voluntary and

intelligent.  *See United States v. Johnson*, 391 F.3d 67, 74-76 (2nd Cir. 2004).

Defendant argues that his failure to appeal should be excused because any appeal

would have been futile.  However, futility is not an excuse for failing to exhaust

administrative remedies.  *See United States v. Roque-Espinoza, supra*, 338 F.3d at 728-

29.[4]

Because Defendant cannot demonstrate that he pursued all available

administrative remedies, the failure to satisfy this first requirement of Section 1326(d)

establishes that his collateral attack on the underlying deportation order fails.  For the

sake of completeness, however, the Court will address the other two requirements of the

statute.

B.    THE DEPORTATION ORDER DID NOT DEPRIVE DEFENDANT OF THE
      OPPORTUNITY FOR JUDICIAL REVIEW

Even if Defendant had not waived his right to appeal, Defendant cannot show that

the deportation order improperly denied him the opportunity for judicial review.  Statutes

---

[4] As the court observed in *Roque-Espinoza*, the Supreme Court's cases construing
the contemporaneous exhaustion requirements of the Prison Litigation Reform Act
suggest strongly that futility excuses will not go far.  *See Porter v. Nussle*, 534 U.S. 516,
122 S.Ct. 983 (2002); *Booth v. Churner*, 532 U.S. 731, 121 S.Ct. 1819 (2001).

dealing with the admission and expulsion of aliens, as is the case here, are not judged by the usual constitutional standard. The Supreme Court has repeatedly stated that statutes which deal with the admission or exclusion of aliens largely are immune from judicial control, and Congress may draft immigration statutes which would be unacceptable if applied to citizens. *See Fiallo v. Bell*, 430 U.S. 787, 792 (1977); *Miller v. Albright*, 520 U.S. 420 (1998). In the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (the "IIRIRA"), Congress chose to deny judicial review of removal orders in cases where the aliens were removable because of an aggravated felony conviction. *See* 8 U.S.C. § 1252(a)(2)(C). Defendant here acknowledged at his deportation hearing that his Larceny from a Person conviction was a crime of violence and, hence, an aggravated felony under the Act. Consequently, he was not then, and is not now, entitled to judicial review of the deportation. Furthermore, as indicated above, Defendant was, in fact, advised of a right to appeal, which he expressly waived.[5]

Notwithstanding Defendant's admissions, he now argues that by using the his October 1990 Larceny from a Person conviction retroactively as an aggravated felony, his due process rights were violated. [*See* Defendant's Brief, pp. 8-9.] The Supreme Court, however, has expressly rejected this argument and has determined that Section 321 of the IIRIRA, 8 U.S.C. § 1326, is not unlawfully retroactive. *See INS v. St. Cyr*, 533 U.S. 289, 310-19, 121 S.Ct. 2271 (2001). *See also Aragon-Ayon v. INS*, 206 F.3d

---

[5]  The appeal would have been, in the first instance, to the BIA. Defendant would have been afforded judicial review in the Sixth Circuit Court of Appeals from an adverse BIA ruling.

847, 853 (9th Cir. 2000) (holding that "Congress intended the 1996 amendments to make the aggravated felony definition apply retroactively to all defined offenses whenever committed"); *United States v. Baca-Valenzuela*, 118 F.3d 1223 (8th Cir. 1997) (retroactive application of statute which rendered defendant's prior offense an aggravated felony was not an ex post facto violation; the statute punishes offense of reentry, not the underlying criminal offense).

C.    THE ENTRY OF THE DEPORTATION ORDER WAS NOT
       FUNDAMENTALLY UNFAIR

The third requirement to succeed in a collateral attack of an underlying deportation order is for the illegally re-entered alien to demonstrate that the entry of the deportation order was fundamentally unfair.  To show that the underlying proceeding was fundamentally unfair, the defendant must show that he was prejudiced.  *See United States v. Sandoval*, 390 F. 1294, 1299 (10th Cir. 2004).  Defendant here relies upon the Supreme Court's decision in *INS v. St. Cyr*, *supra*, to support his contention that his removal hearing was fundamentally unfair because the immigration judge failed to inform him of any possible discretionary relief.

*St. Cyr* was not an illegal re-entry case.  Rather, the case involved the habeas corpus petition of an alien who was determined to be removable by reason of his having pleaded guilty to an aggravated felony and who sought to block his removal.   St. Cyr was a citizen of Haiti who was admitted to the United States as a lawful permanent resident in 1986.  Ten years later, on March 8, 1996, he pleaded guilty in state court to a charge of selling a controlled substance in violation of Connecticut law.  That conviction

12

made him deportable.  Under pre-AEDPA law applicable at the time of his conviction, because he had accrued over seven years of lawful permanent residence, St. Cyr would have been eligible for a waiver of deportation at the discretion of the Attorney General pursuant to Section 212(c) of the INA, 8 U.S.C. § 1182(c) (repealed Sept., 30, 1996).[6] However, removal proceedings against him were not commenced until April 10, 1997, after both the AEDPA and the IIRIRA became effective, and as the Attorney General and the immigration courts had interpreted those statutes, discretionary relief under Section 212(c) was no longer available.

St. Cyr argued in his habeas petition that the AEDPA and IIRIRA amendments to the INA did not affect his rights under § 212(c) because he entered his guilty plea before it took effect.  533 U.S. at 293.  The Supreme Court agreed with St. Cyr.  The Court reasoned:

> IIRIRA's elimination of any possibility of § 212(c) relief for people who entered into plea agreements with the expectation that they would be eligible for such relief clearly attaches a new disability, in respect to transactions or considerations already past.  Plea agreements involve a *quid*

---

[6]  As noted above, Section 212(c) provided:

Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General. . . ."

Although literally applicable only to exclusion proceedings, this section was interpreted by the BIA to authorize any permanent resident alien with "a lawful unrelinquished domicile of seven consecutive years" to apply for a discretionary waiver from deportation.  *See INS v. St. Cyr*, 533 U.S. at 295, quoting *Matter of Silva*, 16 I & N. Dec. 26, 30, 1976 WL 32326 (1976) (adopting the position of *Francis v. INS*, 532 F.2d 268 (2nd Cir. 1976)).

13

*pro quo* between a criminal defendant and the government.  In exchange for some perceived benefit, defendants waive several of their constitutional rights (including the right to a trial) and grant the government numerous tangible benefits, such as promptly imposed punishment without the expenditure of prosecutorial resources.  There can be little doubt that, as a general matter, alien defendants considering whether to enter into a plea agreement are acutely aware of the immigration consequences of their convictions.  Given the frequency with which § 212(c) relief was granted in the years leading up to AEDPA and IIRIRA, preserving the possibility of such relief would have been one of the principal benefits sought by defendants deciding whether to accept a plea offer or instead to proceed to trial.

\* \* \*

Relying upon settled practice, the advice of counsel, and perhaps even assurances in open court that the entry of the plea would not foreclose § 212(c) relief, a great number of defendants in . . . St. Cyr's position agreed to plead guilty.  Now that prosecutors have received the benefit of these plea agreements, agreements that were likely facilitated by the aliens' belief in their continued eligibility for § 212(c) relief, it would surely be contrary to familiar considerations of fair notice, reasonable reliance, and settled expectations, to hold that IIRIRA's subsequent restrictions deprive them of any possibility of such relief.

533 U.S. at 321-23 (citations omitted).

Defendant here pled guilty and was convicted of Larceny from a Person prior to the 1996 amendments.  However, he was also convicted of a drug offense after the effective date of the AEDPA, i.e., <u>after</u> the effective date of the repeal of § 212(c).  Therefore, he is not in the same position as St. Cyr, i.e., he could have had no legitimate expectation of relief under a statute that was repealed before he pled guilty.

With respect to Defendant's claim of fundamental unfairness due to the immigration judge having advised him of the unavailability of discretionary waiver of

14

deportation pursuant Section 212(h) of the Act,[7] it is important to note that as a threshold requirement to any due process claim, every plaintiff must show that he has a protected property or liberty interest.  *See Board of Regents v. Roth*, 408 U.S. 564, 569 (1972). Aliens have no constitutionally protected right to discretionary relief from deportation. *See Ashki v. INS*, 233 F.3d 913, 921 (6th Cir. 2000).

The Supreme Court has repeatedly emphasized the breadth of the Attorney General's discretion in granting relief under the INA.  *See, e.g.*, *Jay v. Boyd*, 351 U.S. 345, 354 (1956) ("Although such aliens have been given a right to a discretionary determination on an application for suspension [of deportation], a grant thereof is

---

[7] As noted by the immigration judge at Defendant's deportation hearing, Section 212(h) provides that

> The Attorney General may, in his discretion, waive [the removal of an alien] insofar as it relates to a single offense of simple possession of 30 grams or less of marijuana if --
>
> * * *
>
> > (1)(B) in the case of an immigrant who is the spouse, parent, son, or daughter of a citizen of the United States or an alien lawfully admitted for permanent residence if it is established to the satisfaction of the Attorney General that the alien's denial of admission would result in extreme hardship to the United States citizen or lawfully resident spouse, parent, son, or daughter of such alien. . . .
>
> No waiver shall be provided under this subsection in the case of an alien who has previously been admitted to the United States as an alien lawfully admitted for permanent residence if *either* since the date of such admission the alien has been convicted of an aggravated felony *or* the alien has not lawfully resided continuously in the United States for a period of not less than 7 years immediately preceding the date of initiation of proceedings to remove the alien. . . .

15

manifestly not a matter of right under any circumstances, but rather is in all cases a matter of grace."); *see also INS v. Yue Shaio Yang*, 519 U.S. 26, 30 (1996) (expressly reaffirming *Jay v. Boyd*'s description of the Attorney General's discretion).  The Court has likened the Attorney General's discretion in this area to "a judge's power to suspend the execution of a sentence, or the President's power to pardon a convict."  *Jay v. Boyd, supra*, 351 U.S. at 354 n. 16; *see also Ohio Adult Parole Authority v. Woodward*, 523 U.S. 272, 273 (1998) (holding there is no liberty interest in pardon).

The foregoing demonstrates that the availability of administrative grace creates no liberty interest.  *See United States v. Aguirre-Tello*, 353 F.3d 1199, 1205 (10th Cir. 204) (en banc) ("both pardon and a § 212(c) waiver are acts of grace, left to the complete and unfettered discretion of the one from who they are sought"); *Mireles-Valdez v. Ashcroft*, 349 F.3d 213, 219 (5th Cir. 2003) ("[e]ligibility for discretionary relief from a removal order is not a liberty or property interest warranting due process protection."); *Smith v. Ashcroft*, 295 F.3d 425, 429 (4th Cir. 2002) (no liberty interest in INA § 212(c) relief); *Appiah v. INS*, 202 F.3d 704, 709 (4th Cir. 2000) ("Because suspension of deportation is discretionary, it does not create a protectable liberty or property interest.")

The only relief to which Defendant here claims entitlement to is discretionary, which is not a property or liberty interest protected by the Constitution and cannot serve as the basis of a claim of violation due process.  Therefore, the failure of the immigration judge to inform him, or misinform him, of any discretionary relief did not render the removal hearing fundamentally unfair.

Furthermore, any defendant charged with illegal re-entry who seeks to challenge a

16

prior deportation order must show actual prejudice resulting from the alleged deficiency in the deportation proceedings. *See United States v. Sandoval, supra; see also United States v. Encarcacion-Galvez*, 964 F.2d 402, 407 (5th Cir.), *cert. denied*, 506 U.S. 945 (1992). To show actual prejudice, the alien must show there was a reasonable likelihood that, but for the deficiency, he would not have been deported. *Id.*

Additionally, the circuits are virtually unanimous in requiring *actual* prejudice, not merely that the defendant might have been afforded some relief. *See e.g., United States v. Paredes-Batista*, 140 F.3d 367, 378 (2nd Cir.), *cert. denied*, 119 S.Ct. 143 (1998); *United States v. Lasiga*, 104 F.3d 484, 487 (1st. Cir.), *cert. denied*, 117 S.Ct. 2447 (1997); *United States v. Perez-Ponce*, 63 F.3d 1120, 1122 (8th Cir. 1995); *United States v. Espinoza-Farlo*, 34 F.3d 469, 471 (7th Cir. 1994); *United States v. Proa-Tavor*, 975 F.2d 592, 595 (9th Cir. 1992) (en banc).

The Second Circuit recently enumerated factors that a court should consider in determining whether there was a reasonable probability of actual prejudice to a defendant challenging his underlying deportation. *See United States v. Scott*, 394 F.3d 111 (2nd Cir. 2005). The appellate court in *Scott* court instructed that courts should consider such adverse factors as the nature and circumstances of the exclusion ground at issue; other immigration law violations; the alien's criminal record and evidence indicative of an aliens undesirability as a permanent resident. *Id.* at 119. The court should also consider such favorable factors as: family ties to the United States; many years of residency in the United States; hardship to the alien and his family upon deportation; United States military service; employment history; community service; property or business ties;

17

evidence attesting to good character, and in the case of a convicted criminal, proof of genuine rehabilitation.  *Id.*

Although the *Scott* court found that the positive factors outweighed the negative factors, and accordingly, granted the defendant relief from the underlying deportation order, applying these factors here, it is clear that the adverse factors outweigh the favorable factors.  Defendant's criminal history at the time of his removal hearing included three felony convictions -- including one such felony being a crime of violence -- and a misdemeanor offense of malicious destruction of property.  Defendant had violated his parole on the Larceny from a Person Conviction and was returned to prison. Further, prior to being discharged from parole, Defendant committed the drug offense. Based on Defendant's criminal history at the time of his removal, the possibility of relief is "too far slender to support a showing of prejudice."  *United States v. Encarcacion-Galvez*, *supra*, 964 F.2d at 410.

Furthermore, Defendant has failed to demonstrate any evidence indicative of his desirability as a permanent resident.  He already has violated a personal protection order against him which resulted in further jail time.  He has not shown evidence of U.S. military service; any substantial employment history; community service or property or business ties, He has presented no evidence whatsoever attesting to good character.  Most importantly, proof of genuine rehabilitation with regard to his criminal conduct is entirely lacking.  Thus, although Defendant has family ties to the United States and many years of residency in the United States, these "positive factors" are substantially outweighed by the negative factors.

18

For all of the foregoing reasons, the Court finds that Defendant has failed to show that he was prejudiced by the immigration judge's alleged error in failing to advise him of the availability of discretionary waiver of deportation.

<u>CONCLUSION</u>

For the reasons set forth above in this Opinion and Order,

IT IS HEREBY ORDERED that Defendant's Motion to Dismiss Indictment is DENIED.


s/Gerald E. Rosen
Gerald E. Rosen
United States District Judge

Dated:  May 4, 2005

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 4, 2005, by electronic and/or ordinary mail.

s/LaShawn R. Saulsberry
Case Manager

19